ORIGINAL
D&F
C/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
EDP MEDICAL COMPUTER SYSTEMS, INC.,

                    Plaintiff,

-against-

UNITED STATES OF AMERICA,

                    Defendant.
-----------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 03-CV-3619 (FB) (RLM)

*Appearances:*
*For the Plaintiff:*
NORMAN A. KAPLAN, ESQ.
111 Great Neck Road
Great Neck, NY 10021

*For the Defendant:*
WENDY J. KISCH, ESQ.
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, DC 20044-0055

**BLOCK, Senior District Judge:**

        Plaintiff, EDP Medical Computer Systems, Inc. ("EDP"), brought this action pursuant to 28 U.S.C. § 1346(a)(1), seeking a refund from the United States for a tax liability assessed against it and paid by the bankruptcy trustee to the Internal Revenue Service ("IRS") after EDP had filed for bankruptcy protection.[1] The United States moves for summary judgment; EDP cross-moves for summary judgment. For the reasons set forth below, the United States' motion is granted and the complaint is dismissed.

---

[1] Pursuant to 28 U.S.C. § 1346(a)(1), "[t]he district courts shall have original jurisdiction . . . of: (1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws."

## BACKGROUND

### A. Tax Assessments

The following facts are undisputed. EDP employed a number of wage-earners during the fourth quarter of 1984; thus, it was required to file with the IRS a quarterly Employer's Federal Tax Return ("Form 941"). After EDP failed to file the Form 941 for that quarter, the IRS, pursuant to its authority under 26 U.S.C. § 6020(b), prepared and filed the Form 941 on behalf of EDP, reflecting that EDP owed $11,744.28 in employment taxes.[2] In calculating this amount, the IRS examined EDP's payroll for the first three quarters of 1984, and used the highest payroll amount from those quarters ($38,255.00). On August 19, 1985, EDP paid the IRS that assessed tax liability; on February 7, 1986, EDP paid an additional $4,196.23 in interest and a late-filing penalty.

According to the IRS, it later received an unsigned but completed tax return dated January 15, 1985; the return showed a substantially higher tax liability for the fourth quarter of 1984 than the IRS had estimated. Thus, on May 12, 1986, the IRS imposed an additional tax assessment of $51,016.12; EDP did not pay this additional assessment.

### B. Bankruptcy Petition

On December 1, 1992, EDP filed a Chapter 11 petition in the bankruptcy court for the Middle District of Pennsylvania. On April 5, 1995, the petition was transferred to

---

[2]26 U.S.C. § 6020(b)(1) provides: "If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise."

2

the Eastern District of New York; on October 11, 1995, the bankruptcy case was converted from a Chapter 11 reorganization to a Chapter 7 liquidation.

On November 30, 1995, pursuant to 11 U.S.C. § 501, the IRS filed a Proof of Claim with the bankruptcy court reflecting a pre-petition federal tax liability of $147,271.44;[3] the amount represented the additional $51,016.12 assessed for the fourth quarter of 1984, plus approximately ten years' worth of interest and penalties. Almost four years later, on November 1, 1999, the bankruptcy trustee filed a motion objecting to various claims against EDP, including the IRS's Proof of Claim.[4] A hearing on the Proof of Claim was scheduled for January 11, 2000.

Prior to the hearing, on December 22, 1999, the IRS filed an Amended Proof of Claim, totaling $166,181.47, which superseded the original Proof of Claim; the roughly $20,000.00 increase represented an additional assessment for unpaid unemployment taxes, plus additional interest and penalties. The trustee never filed an objection to the Amended Proof of Claim; EDP never filed an objection to either the Proof of Claim or the Amended Proof of Claim.

On January 11, 2000, the date for which the hearing on the trustee's objection

---

[3] 11 U.S.C. § 501(a) provides that "[a] creditor or an indenture trustee may file a proof of claim."

[4] 11 U.S.C. § 502(a) allows "a party in interest" to object to "[a] claim or interest, proof of which is filed under section 501"; "[t]he trustee is a party in interest within the meaning of section 502(a)." 4 *Collier on Bankruptcy* ¶ 502.02[2][a] (15th ed. rev. 2005). If a party in interest objects to a claim, the bankruptcy court holds a hearing and decides whether to allow or disallow the claim. *See* 11 U.S.C. § 502(b). If no party in interest objects, the claim is "deemed allowed" without the need for a hearing. *Id.* § 502(a).

to the Proof of Claim had been scheduled, the trustee agreed to the Amended Proof of Claim, thereby obviating the need for the hearing. On January 26, 2000, the bankruptcy court issued an order allowing the Amended Proof of Claim and disallowing the Proof of Claim as having been superseded by the Amended Proof of Claim.

## C. Stipulation

On March 15, 2000, Bernard Gelb, the president of EDP, Judith Gelb, his wife and the majority shareholder of EDP, and 143-11 Realty Corp., a corporation solely owned by Judith Gelb (collectively, "the Gelbs"), entered into a stipulation with the United States, "so ordered" by this Court, to resolve a *habeas corpus* petition filed by Bernard Gelb pertaining to the restitution and fine that he had been ordered to pay as a result of a 1989 criminal conviction. In the Stipulation, the Gelbs agreed to make two separate lump-sum payments toward satisfaction of the restitution and fine; in exchange, the Stipulation provided that the remainder of the restitution and fine would be discharged, and that "[a]ll other claims by the [United States] against [Bernard] Gelb, [Judith] Gelb, 143-11 Realty Corp. or EDP, whether made or not, whether accrued or not, [we]re . . . waived and the [United States] generally release[d] [Bernard] Gelb, [Judith] Gelb, 143-11 Realty Corp. and EDP from all claims which it may have [had] except as set forth in th[e] stipulation." The Stipulation did not mention the Proof of Claim or Amended Proof of Claim.

## D. Judith Gelb's Intervention and EDP's Basis for the Present Dispute

On June 1, 2000, Judith Gelb moved to intervene in the EDP bankruptcy proceeding and objected to the Amended Proof of Claim; however, on August 25, 2000, she

withdrew her motion. On November 7, 2000, in accordance with the bankruptcy court's January 26 order allowing the Amended Proof of Claim, the IRS received payment of $195,001.23 (the amount of the claim plus post-petition interest).

On June 1, 2001, the trustee closed the bankruptcy case. At that time, all claims except post-petition interest had been paid in full and the estate had a net worth of $0.00. Had the Amended Proof of Claim been disallowed, the estate would have had a net worth of $195,001.23; while a small amount of that surplus would have gone towards additional post-petition interest on the remaining claims, the bulk of it would have gone to the debtor.

More than two years after the close of the bankruptcy case, EDP filed the present action seeking refund of the $195,001.23 received by the IRS in satisfaction of the Amended Proof of Claim; EDP argues that the trustee erroneously paid the claim because the tax assessment was imposed in error or, alternatively, barred by the waiver of claims in the Stipulation.

## DISCUSSION

"Summary judgment is only warranted upon a showing 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(c)). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Savino v. City of New York*, 331 F.3d 63, 71 (2d Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242

(1986)). In considering a motion for summary judgment, the Court must "resolve all ambiguities and draw all factual inferences in favor of the nonmoving party." *Id.* (citing *Anderson*, 477 U.S. at 255).

The United States argues that it is entitled to judgment as a matter of law because the undisputed facts of this case demonstrate (1) that EDP lacks standing to pursue the tax-refund claim because the claim remains property of the bankruptcy estate, (2) that the doctrine of *res judicata* bars relitigation of the bankruptcy court's January 26, 2000 order allowing the Amended Proof of Claim, and (3) that the tax assessment was validly imposed and not barred by the Stipulation. The Court agrees with points (1) and (2); it is therefore unnecessary to address point (3).

**A. Standing**

"Standing generally has two aspects: constitutional standing, a mandate of the 'case or controversy' requirement in Article III, and prudential considerations of standing, which involve 'judicially self-imposed limits on the exercise of federal jurisdiction.'" *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 126 (2d Cir. 2003) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). "It is clear that constitutional standing is a jurisdictional prerequisite to suit," *id.*; "prudential considerations of standing are also generally treated as jurisdictional in nature." *Id.* Thus, the Court is obliged to determine whether EDP has standing under Article III and whether, if there be such standing, any prudential considerations limit the Court's jurisdiction to reach the merits of the tax-refund claim.[5]

---

[5] As the Second Circuit has noted, another aspect of standing – statutory standing – is sometimes described as "part of the prudential considerations regarding the proper

*1. Article III Standing*

"To establish Article III standing, a plaintiff must . . . allege, and ultimately prove, that he has suffered an injury-in-fact that is fairly traceable to the challenged action of the defendant, and which is likely to be redressed by the requested relief." *Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003) (citing *Bennett v. Spear*, 520 U.S. 154 (1997), and *Lujan v. National Wildlife Fed'n*, 497 U.S. 871 (1990)). In *Dunmore v. United States*, 358 F.3d 1107 (9th Cir. 2004), the Ninth Circuit concluded that a Chapter 7 debtor seeking a tax refund had Article III standing because he had suffered "an injury in fact, the overpayment of federal income taxes, that is fairly traceable to the IRS's refusal to refund the sums purportedly due [him], and is redressable by the court if it were to award [him] his asserted refund," *id.* at 1112; for the same reasons, the Court concludes that EDP has Article III standing to pursue the tax-refund claim.

*2. Prudential Limitations on Standing*

As noted in *Lerner*, even if a plaintiff has Article III standing, prudential considerations may limit the plaintiff's ability to invoke federal jurisdiction. "One of these limitations is that a 'plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *LaFleur v. Whitman*, 300 F.3d 256, 269 n.2 (2d Cir. 2002) (quoting *Warth v. Seldin*, 422 U.S. 490, 499

---

limits of jurisdiction," *Lerner*, 318 F.3d at 126 (citing *Law Offices of Curtis V. Trinko, LLP v. Bell Atl. Corp.*, 305 F.3d 89 (2d Cir. 2002)), and sometimes as "a separate, third aspect of standing." *Id.* at 126 n.12 (citing *Libertad v. Welch*, 53 F.3d 428 (1st Cir. 1995)). The distinction is not pertinent here.

7

(1975)).[6] In *Dunmore*, the Ninth Circuit held that, despite the existence of Article III standing, this limitation potentially barred the plaintiff's tax-refund claim because the claim resided with his bankruptcy estate when he filed his complaint. *See* 358 F.3d at 1112. Thus, EDP cannot invoke the Court's jurisdiction to assert the tax-refund claim if the claim belongs to the bankruptcy estate. Deciding whether EDP or the bankruptcy estate owns the claim presents two issues: (1) whether the claim was, as an initial matter, property of the estate; and (2) if so, whether the trustee abandoned the claim.

### a. Property of the Bankruptcy Estate

When a debtor files for bankruptcy protection, a bankruptcy estate is created. That estate is comprised of the "property" set forth in 11 U.S.C. § 541(a)(1-7); it is well-established that "property" under that statute includes, as here, a civil lawsuit for damages. *See Seward v. Devine*, 888 F.2d 957, 963 (2d Cir. 1989).

Relevant to this case is § 541(a)(7), which provides that "[a]ny interest in property that the *estate* acquires after the commencement of the case" belongs to the estate, 11 U.S.C. § 541(a)(7) (emphasis added); by contrast, property that the *debtor* acquires after the commencement of the case belongs to the debtor. *See In re Doemling*, 127 B.R. 954, 956 (W.D. Pa. 1991) ("[S]ection 541(a)(7) is . . . limited to property acquired post-petition by the estate as opposed to property acquired by the debtors."). Thus, at issue is whether the tax-

---

[6]The other prudential limitations – "the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked," *Allen*, 468 U.S. at 751 – are not implicated in this case.

refund claim was acquired by the debtor or by the estate.

The present case is analogous to *Segal v. Rochelle*, 382 U.S. 375 (1966), where the Supreme Court held that a tax-refund claim that arose post-petition but was based on a tax filing made pre-petition was "sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered fresh start" that it belonged to the estate. *Id.* at 380. Although the Supreme Court's ruling in *Segal* was not based on the current Bankruptcy Code, "[m]odern day courts have adopted the reasoning of *Segal* in interpreting the scope of property of the estate under the Bankruptcy Code." *In re Durrett*, 187 B.R. 413, 417 (Bankr. D.N.H. 1995).

As in *Segal*, the tax-refund claim at issue here arose post-petition when the trustee paid the tax assessment. *See Flora v. United States*, 362 U.S. 145, 177 (1960) (holding that a taxpayer must make "full payment of the assessment before an income tax refund suit can be maintained"). Because, however, the assessment giving rise to the claim occurred pre-petition, it is "sufficiently rooted in the pre-bankruptcy past." *Segal*, 382 U.S. at 380. There is, moreover, no concern that treating the claim as property of the estate will interfere with EDP's "ability to make an unencumbered fresh start." *Id.* Unlike individuals, corporations do not receive a discharge of their debts at the end of a Chapter 7 bankruptcy, *see* 11 U.S.C. § 727(a)(1) ("The [bankruptcy] court shall grant the debtor a discharge, unless . . . the debtor is not an individual."); consequently, "[t]he fresh start policy . . . does not apply to corporate debtors." *In re Prudential Lines Inc.*, 928 F.2d 565, 573 (2d Cir. 1991) (citations omitted). "Thus, the concern that the *Segal* Court expressed

9

[regarding interference with the fresh start] does not apply to a situation involving a corporate debtor." *Id.* Under *Segal*, then, the tax-refund claim qualifies as property of the estate.

### b. Abandonment

EDP argues that even if the tax-refund claim belonged to the estate, the trustee abandoned the claim by failing to assert it prior to the close of the bankruptcy case. "[A] long-standing principle of bankruptcy law allows a [t]rustee to abandon property, including [claims for damages], if such property is burdensome or of inconsequential value to the bankruptcy estate." *Fedotov v. Peter T. Roach & Associates, P.C.*, 354 F. Supp. 2d 471, 475 (S.D.N.Y. 2005). Abandonment of a claim revests that claim with the debtor. *See In re VonGrabe*, 332 B.R. 40, 43 (Bankr. M.D. Fla. 2005).

EDP's argument has superficial appeal. Having paid the Amended Proof of Claim, the trustee is unlikely to now pursue the tax-refund claim. Practically speaking, then, the trustee has abandoned the claim.

Under bankruptcy law, however, "abandonment" has a more limited, technical meaning:

> Property of the estate may be abandoned in two ways. First, it may be formally abandoned after 'notice and a hearing' [in the bankruptcy court.] Second, it may be abandoned by operation of law if it has been scheduled [in the debtor's schedule of assets required by 11 U.S.C. § 521(1)] and not 'otherwise administered' at the time the [bankruptcy] case is closed.

*Stanley v. Sherwin-Williams Co.*, 156 B.R. 25, 26 (W.D. Va. 1993) (quoting 11 U.S.C. §§ 554(a-c)). "Property of the estate that is not abandoned [in one of these two ways] and

10

that is not administered in the case remains property of the estate," 11 U.S.C. § 554(d), even after the bankruptcy case is closed. *See In re McCoy*, 139 B.R. 430, 432 (Bankr. S.D. Ohio 1991) (holding that closing of case did not constitute abandonment of unscheduled tax-refund claim).

Here, it is undisputed that the trustee did not administer the tax-refund claim (by, for example, pursuing it on behalf of the estate or assigning it to a creditor). In fact, it is clear that the trustee never had any intention of administering the claim because he never believed that a meritorious claim existed.

Moreover, it is undisputed that the tax-refund claim has not been abandoned under either of the only two authorized methods of abandonment. No formal abandonment occurred because no hearing on that issue was ever held. No deemed abandonment occurred because EDP did not amend its schedule of assets to include the claim after it arose. *See In re McCoy*, 139 B.R. at 432 (holding that deemed abandonment did not occur because the debtor "did not include the tax refund when she amended her schedules").

In sum, the tax-refund claim has not been abandoned and remains part of the bankruptcy estate; therefore, prudential limitations on standing preclude EDP from invoking this Court's jurisdiction to adjudicate the claim.

EDP's lack of standing to assert the claim is theoretically curable. 11 U.S.C. § 350(b) allows a bankruptcy case to be reopened "to administer assets, to accord relief to the debtor, or for other cause"; thus, EDP could seek to have the bankruptcy case reopened,

and then ask the bankruptcy court to order the trustee to abandon the claim. *See* 11 U.S.C. § 554(b) (authorizing any "party in interest" to request formal abandonment). Abandonment in the bankruptcy case would cure the jurisdictional defect in the present action. *See Dunmore*, 358 F.3d at 1111 ("The bankruptcy court . . . ordered the trustee to abandon the claims to [the debtor]. It concluded that the [abandonment] cured [the debtor's] lack of standing to pursue the refund claims[.]").

In this case, however, such a course of action would be futile. As explained below, even if EDP had standing to pursue the tax-refund claim, the claim would be barred by the doctrine of *res judicata*.

**B. *Res Judicata***

"Under the doctrine of *res judicata*, or claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been* raised in that action.'" *St. Pierre v. Dyer*, 208 F.3d 394, 399 (2d Cir. 2000) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)) (emphasis added). "The normal rules of *res judicata* and collateral estoppel apply to the decisions of bankruptcy courts." *Katchen v. Landy*, 382 U.S. 323, 334 (1966).

The bankruptcy court's January 26, 2000 order allowing the Amended Proof of Claim constitutes a final judgment on the merits. *See In re Los Gatos Lodge, Inc.*, 278 F.3d 890, 894 (9th Cir. 2002) ("Proofs of claims themselves are not final judgments giving rise to *res judicata*, but the bankruptcy court's allowance or disallowance of a proof of claim is a final judgment."); *Bank of Lafayette v. Baudoin*, 981 F.2d 736, 742 (5th Cir. 1993) (For *res*

*judicata* purposes, "an order allowing a proof of claim is ... a final judgment."). This is true even though no party objected to the claim, which was therefore "deemed allowed" under § 502(a). *See supra* note 4. While the Fourth Circuit has stated in *dicta* that "it is doubtful that the 'automatic allowance' under 11 U.S.C.§ 502(a) of a claim not objected to constitutes a 'final judgment' of the type that gives rise to 'bar' or 'claim preclusion' under strict *res judicata* principles," *County Fuel Co. v. Equitable Bank Corp.*, 832 F.2d 290, 292 (4th Cir. 1987), the bases for the court's doubts were that the allowance at issue was still subject to reconsideration and was not final for purposes of appellate review. *See id.* As the Ninth Circuit correctly noted in *Siegel v. Federal Home Loan Mortgage Corp.*, 143 F.3d 525 (9th Cir. 1998), "those doubts should dissipate where, as here, the debtor has received his discharge and the bankruptcy has closed. By then any lingering doubts about finality would surely have been assuaged." *Id.* at 530.

Moreover, EDP was a party to the bankruptcy proceeding for the purpose of challenging the Amended Proof of Claim. Since 11 U.S.C. § 502(a) allows any "party in interest" to object to "[a] claim or interest, proof of which is filed under section 501," a Chapter 7 debtor can object to a proof of claim "if it can be demonstrated that the disallowance of the claim would produce a surplus in the estate." *In re Silverman*, 37 B.R. 200, 201 (S.D.N.Y. 1982); *see also* 4 *Collier on Bankruptcy* ¶ 502.02[2][c] (15th ed. rev. 2005) ("The [Chapter 7] debtor ... has an interest if there is any chance that a disallowance will yield a solvent estate that would provide a return to the debtor."). By contrast, when there is no chance of a surplus, "[a]s a general rule ..., the chapter 7 trustee alone may interpose

objections to proofs of claims." *In re Thompson*, 965 F.2d 1136, 1147 (1st Cir. 1992). Here, it is undisputed that disallowance of the Amended Proof of Claim would have yielded a surplus; therefore, EDP was a "party in interest" and could have objected to the Amended Proof of Claim.

In any event, Judith Gelb filed an objection to the Amended Proof of Claim and then withdrew it; as EDP's majority shareholder, she was certainly in privity with EDP. *See, e.g., In re Teltronics Services, Inc.*, 762 F.2d 185, 189-91 (2d Cir. 1985) (for purposes of *res judicata*, "it is evident that [an individual who was founder, president, chairman of the board, and a 15-20% shareholder in corporation] was in privity with [the corporation.]"). It is irrelevant that Judith Gelb did not intervene until after the January 26, 2000 order had been entered. There is no time limit – prior to the close of the bankruptcy estate – for interested parties to file objections. *See In re Thompson*, 965 F.2d at 1147 ("Unlike a proof of claim, which must be filed before the bar date, an objection to a proof of claim may be filed at any time.").

Finally, the issues EDP raises in the present action could have been raised in the bankruptcy proceeding. With regard to this aspect of *res judicata*, "[a] first judgment will generally have preclusive effect only where the transaction or connected series of transactions at issue in both suits is the same, that is 'whe[re] the same evidence is needed to support both claims, and whe[re] the facts essential to the second were present in the first.'" *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1463-64 (2d Cir.1996) (quoting *NLRB v. United Techs. Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983)). The evidence and facts needed to

support EDP's claims in this Court – that the tax assessment was imposed in error and that the assessment was barred by the waiver of claims in the Stipulation – were available to EDP during the bankruptcy proceeding and could have been raised in support of an objection to the Amended Proof of Claim.

In sum, EDP is bound by the bankruptcy court's allowance of the Amended Proof of Claim and cannot relitigate issues that could have been raised by filing an objection to the claim during the bankruptcy proceeding. For cases proceeding under Chapter 11 or Chapter 13, the Bankruptcy Code itself so provides. *See* 11 U.S.C. § 1141 ("[T]he provisions of a confirmed plan bind the [Chapter 11] debtor[.]"), § 1327 (same for Chapter 13 debtor). Courts have recognized the common sense behind these provisions: "Allowing collateral attacks [on claims approved in the order confirming the reorganization plan] would give debtors an incentive to refrain from objecting in the bankruptcy proceeding and would thereby destroy the finality that bankruptcy confirmation is intended to provide." *Adair v. Sherman*, 230 F.3d 890, 894-95 (7th Cir. 2000) (citing *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1553 (11th Cir. 1990), and *In re Ross*, 162 B.R. 785, 788 (Bankr. N.D. Ill. 1993)).

Although Chapter 7 contains no analogous provision, common sense compels the same conclusion. It would destroy the finality of a bankruptcy proceeding to allow a Chapter 7 debtor to remain silent while the trustee pays a claim with the bankruptcy court's approval, and then challenge the claim in subsequent litigation. Indeed, the Ninth Circuit so held in *Siegel*, a case strikingly similar to the present case; there, as here, a

Chapter 7 debtor argued that "he should not be penalized by the bankruptcy trustee's failure to pursue an action against [a creditor]." 143 F.3d at 531. Noting that the debtor could have objected in the bankruptcy case, but had failed to do so, the court wisely "s[aw] the debtor's attack for what it [was] – an attempt to undercut the order of a bankruptcy court . . . which allowed a creditor's claims and achieved finality for the debtor and the creditor[.]" *Id*. Like the debtor in *Siegel*, EDP has "offer[ed] no persuasive reason why [it] should not be bound for *res judicata* purposes." *Id*.

## CONCLUSION

The United States' motion for summary judgment is granted and the complaint is dismissed.

**SO ORDERED.**

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
November 22, 2005